## New American File Co. v. Nicholson File Co.

### (Circuit Court, D. Rhode Island. 1881.)

1. Patent No. 29,236—File-Cutting Machine—Limitation of Foreign upon United States Patents—Extension — Private Act Extending Original Grant—Demurrer to Bill.

Etieme Bernot, the inventor of a machine for cutting files, patented his invention in France, August 31, 1854, and in England, March 27, 1855. On July 24, 1860, United States letters patent No. 29,236 were issued to him for 14 years from that date. Under the statutes of 1836 and 1839, governing this issue, such a patent would have expired in 14 years from the date of the French patent, i. e., August 31, 1868; but in July, 1862, a private act of congress was passed, enacting that the grant should be valid for 14 years from its date. On July 23, 1874, before its expiration, the commissioner of patents extended the patent for seven years from July 24, 1874. A demurrer to the bill, denying the right of the commissioner to extend the patent, *overruled.*

2. SECTION 15, ACT OF 1836, CONSTRUED—EXTENSION.

The act of 1836, providing that extensions of letters patent might be granted to any patentee, subject to certain conditions, *held*, not to discriminate against those which, by the act of 1839, providing for the granting of patents for inventions previously patented abroad, are limited to 14 years from the date of such foreign patent.

3. PREVIOUS FOREIGN PATENTS—LIMITATION OF, UPON UNITED STATES PATENTS—EARLIER FOREIGN PATENT—SUBSEQUENT FOREIGN PATENT.

The act of 1839 requiring the commissioner to limit a patent, previously patented abroad, not to the shortest term of any such foreign patent, but to 14 years from the date of the earliest of such patents, the existence of any subsequent foreign patent is immaterial; therefore, the private act of congress passed July, 1864, enacting that the grant of the United States patent should be valid for 14 years from *its* date, rather than from the date of the *French* patent, cured the only defect in the grant that existed.

In Equity.   Demurrer.

*Wm. M. Douglas* and *Chauncey Smith*, for complainant.

*Benj. F. Thurston*, for defendant.

Before LOWELL and COLT, JJ.

LOWELL, C. J.   The facts set out in the bill and admitted by the demurrer are as follows:

Etiene Bernot, of Paris, France, was the inventor of a new and useful machine for cutting files, and obtained letters patent therefor in France, August 31, 1854, and in Great Britain, March 27, 1855. On the third day of July, 1860, he applied for letters patent of the United States. They were granted him July 24, 1860, for 14 years from that day. He assigned this American patent to George Somerville Norris, of Baltimore. In July, 1862, a private act of congress was passed (12 St. 909) reciting the grant of the American patent, and enacting that it should be a valid grant for the full term of 14 years from its date, notwithstanding the fact that it ought to have been granted only for the term of 14 years from the date of the French patent. The second section provides that the title of Norris, the assignee, should be good and valid to vest in him the "executive right under the said patent for the full period of the term of 14 years from the date of said patent, in like manner and to the same extent as if the said patent, when originally issued, had been validly granted for 14 years from the date thereof." Bernot died in 1873, and his administrator, before the twenty-third day of July, 1874, presented his petition to the commissioner of patents for an extension of said letters patent, and the commissioner did extend them, accordingly, for the term of seven years from July 24, 1874. They have been duly assigned to the plaintiff corporation, and the defendants have infringed upon the rights thereby granted.

The demurrer raises the question whether the commissioner had power to extend this patent? The statute of 1836, § 15, (5 St. 124,) gave to every patentee the right to apply for an extension, and it was to be given him if he satisfied the official persons therein mentioned

v.8,no.11—52

of certain facts touching his remuneration, etc., provided that no extension of a patent should be granted after the expiration of the term for which it was originally limited. This was the law until the act of March 2, 1861, by which the policy was adopted of granting patents for 17 years, and not extending them under any circumstances; but this applied only to grants after March 2, 1861, (12 St. 249.) When the statutes concerning patents were revised and consolidated in 1870, section 63 of the statute reserved the right to apply for an extension to all inventors whose patents were granted before March 2, 1861, (16 St. 208;) and this is repeated in Rev. St. §§ 4924–4928. The language of all these statutes is broad, and makes no exception of persons who have taken out patents in foreign countries, and it is admitted by the defendants that no discrimination was made at the patent-office down to 1870, but that any inventor might have an extension who could prove the necessary facts, without regard to the question whether he held a foreign patent. Many such extended patents have been litigated, and no objection appears to have been taken to the power of the office to extend them.

By the law in 1836, and before and since, a patent can be granted, generally speaking, only to the original and first inventor, and the invention must not have been patented elsewhere, or described in a printed publication. The statute of 1836, § 8, (5 St. 121,) provided that nothing therein contained should deprive an original and true inventor of a right to a patent by reason of his having taken out letters patent therefor in a foreign country, and the same having been published at any time within six months next preceding the filing of his specification and drawings in this country. By the act of 1839, § 6, (5 St. 354,) the lapse of six months after the invention had been patented abroad was declared not to be fatal, provided the invention had not been introduced into public and common use in the United States, and provided that all such patents should be limited to the term of 14 years from the date or publication of the foreign letters patent.

We have no more doubt than counsel have that the general and broad provision for extending patents made no discrimination against those which were limited to 14 years from the date of a foreign patent. Congress probably took for granted that all foreign patents were limited to 14 years, and they intended that the American patent should expire with the foreign patent; but in respect to extensions they failed to legislate. Certainly there would be no justice in providing that an inventor, who had been diligent enough to obtain a

foreign patent, should lose this right merely because the invention was free in foreign countries, when all inventions are free there, if the inventors do not choose to patent them. They contented themselves with declaring that if an inventor had a monopoly abroad, the original term here should coincide with what they assumed to be the term there.

In the Revision of 1870, section 25, it is enacted that no person shall be debarred from receiving a patent for his invention, nor shall any patent be declared invalid by reason of its having been first patented in a foreign country, provided it shall not have been introduced into public use in the United States for more than two years prior to the application, and that the patent shall expire at the same time with the foreign patent; or, if there be more than one, at the same time with the one having the shortest term; but in no case shall it be in force for more than 17 years. 16 St. 201.

We have already said that this same statute reserved to all inventors, whose patents had been granted before March 2, 1861, the right to apply for an extension. See sections 63–67. The able and learned commisioner of patents, Mr. Fisher, who was in office for a short time after the statute was passed, held that, notwithstanding the broad language of sections 63 to 67, and though section 25 was not, in his opinion, retroactive, yet the law of 1870 had introduced a new policy to make all this class of patents free here when they became so abroad; and therefore, in the exercise of his discretion, he would not extend a patent which would expire abroad contemporaneously with its expiration here. *Re Mushet*, Com. Dec. 1870, p. 106; *Re Ward*, Id. 126; *Re Boyer*, Id. 130. The defendants insist that the commissioner was not only wise in this use of his discretion, if he had any, but that he had none to extend such a patent after 1870. We cannot admit the cogency of this reasoning.

There can be no reasonable doubt that congress, in the statute of 1870, intended to leave patents granted before March 2, 1861, exactly where they were. They used apt language for this purpose, and if the commissioner had power to extend any such patent before 1870, he had exactly the same afterwards, for it is entirely clear that section 25 is not retroactive. The intent of congress is fully carried out; because, for all patents since March 2, 1861, there can be no extension, and therefore, if they expire at the end of the earliest foreign patent, that is the end of them. The fallacy lies in applying to old patents a policy which is, in terms, confined to new ones. The patent-office reversed its decision in the same year, after Mr. Fisher had

retired from office, and the reasoning of the later opinion appears to us sound. *Re Apperly*, Com. Dec. 1870, p. 163. Even if the office should be thought to have exercised its discretion improvidently in this case, we have no power to reverse the decision.

Bernot's patent was granted in 1860, while the statute of 1839, § 6, (5 St. 354,) was in operation; it should, therefore, have been limited to 14 years from August 31, 1854, the date of the French patent. This was not done. If the private act of congress had not been passed, the patent would have expired August 31, 1868, because the law considered that to be done which should have been done, and read the statute into the patent. *O'Reilly v. Morse*, 15 How. 62. In that event, an extension could have been granted before the end of August, 1868, but not afterwards. *Re Gessner*, Com. Dec. 1871, p. 48. This decision is cited in the defendant's supplemental brief, as if it coincided with Mr. Fisher's ruling against extending a patent which is about to expire abroad. This is a misreading. The patent had expired two years before the application, by the expiration of the foreign patent, under the decision in *Morse v. O'Reilly*, which is cited by the commissioner as his authority in the premises.

Again, it is contended that the private act of congress merely cured the defect arising out of the grant of the French patent, omitting, by inadvertence or design, all mention of the English patent, and therefore the American patent expired in 1869. If we were dealing with a patent issued since 1870, it would be true that if, by any means, the French grant, and that only, were removed from the case, the patent would yet expire with the English grant; but, as we have said, the law of 1839 required the commissioner to limit Bernot's patent, not to the shortest term of any foreign patent, which might be 3 or 5 or 10 years, nor to any term of foreign patents at all, but to 14 years from the date of the foreign patent, and, if there were two, the term should begin to run from the earlier,—in this case, the French patent,—and the existence of the later or English patent was immaterial; and when congress said that Bernot's patent ought to have been limited to 14 years from the date of the French patent, they stated the case with entire accuracy, and mentioned the only defect that existed.

Finally it was argued that the act of congress was a special exercise of sovereign power, giving a prolonged term to the Bernot patent; and that, as the act itself does not provide for an extension, there can be none, any more than there could be if the act had authorized an entirely new patent, which authority, being granted after the pol-

icy of non-extension had been established, in 1861, would carry with it no implied power of renewal. But upon this last supposition the grant would have been for a new term of 17 years, and this was for the remainder of a term of 14 years. We think the fair and obvious construction of the act is that the patent was to be considered a good grant for 14 years from its date, with the right, of course, in the public to dispute its validity for want of patentability in the invention, or want of novelty, and so on, and with the usual right of the patentee to procure an extension, if the circumstances should justify the patent-office in granting it, of which the commissioner was the judge.

Demurrer overruled.